IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD TEAGLE,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | |
| v. | : | No. 07-2805 |
| | : | |
| **DAVID DI GUGLIELMO,** *et al* | : | |
| *Respondents.* | : | |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                                                              **October 18, 2022**

Before the Court is Petitioner Gerald Teagle's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). ECF No. 36.

### I.  BACKGROUND AND PROCEDURAL HISTORY

On September 7, 1982, Gerald Teagle and another assailant found Marvin York in his car and opened fire. Marvin York subsequently died from the gunshot wounds sustained from Teagle and his co-defendant. At trial, Teagle admitted to killing York but claimed that the victim had reached for his weapon first and was killed in self-defense. May 10, 1983 Tr. 71. Key witness Konrad Jett, a long-time friend of York, testified that York was not carrying a gun the day of the incident and was not known for violent behavior. May 9, 1983 Tr. 57, 107-08. Jett also testified that he was at the passenger's side door of the vehicle when he saw Teagle and the co-defendant approaching the car with guns drawn and shoot York without provocation or warning before running away. *Id*. at 57-59, 71-72. A police officer called to the scene shortly after the shooting additionally testified that the police searched the area around the shooting but did not find the firearm York allegedly had in his possession. May 10, 1983 Tr. 13, 38-41.

On May 12, 1983, after a four-day bench trial, Teagle was convicted of first-degree murder, criminal conspiracy, and possessing an instrument of crime. On September 20, 1984, the court imposed a sentence on Teagle of life imprisonment with consecutive ten-year terms of probation. Sept. 20, 1984 Tr. 27-28. The Superior Court of Pennsylvania affirmed Teagle's judgment of sentence in 1985. *Commonwealth v. Teagle*, 505 A.2d 1037 (Pa. Super. 1985). Teagle did not appeal the decision.

On August 15, 1986, Teagle filed his first *pro se* petition for collateral relief from judgment pursuant to Pennsylvania's Post Conviction Hearing Act ("PCHA"). 42 Pa. Con. Stat. Ann. § 9541, *et seq.* (renamed and superseded by the Pennsylvania Post–Conviction Relief Act). Counsel was appointed and filed an amended petition. The court held an evidentiary hearing on the petition. In 1988, the court dismissed the petition. Teagle did not appeal the decision.

In February 1997, nearly a decade later, Teagle filed a second *pro se* petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"). The court dismissed the petition as untimely. The Superior Court of Pennsylvania affirmed that dismissal and the Supreme Court denied allowance of appeal. *Commonwealth v. Teagle*, 726 A.3d 416 (Pa. Super. 1998), *appeal denied*, 737 A.2d 1225 (Pa. 1999).

In June 2004, Teagle filed a third petition for relief under PCRA, this time with counsel, which was again dismissed as untimely. The Superior Court of Pennsylvania affirmed that dismissal and the Supreme Court denied allowance of appeal. *Commonwealth v. Teagle*, 911 A.2d 187 (Pa. Super. 2006), *appeal denied*, 920 A.3d 833 (Pa. 2007).

In 2007, Teagle filed a petition for a writ of habeas corpus in this Court. Teagle claimed that his constitutional rights were violated during his trial and offered three affidavits from three individuals, one of whom was from Konrad Jett, witness to key events during the trial who later

recanted a portion of his testimony. *See Teagle v. Di Guglielmo*, 2008 WL 2039438, at *1 (E.D. Pa. May 9, 2008). Jett allegedly wanted to clear his conscience and asserted in or around 2004 that York did have a gun in his possession on the day of the shooting and that York had a violent temper. *Id*. at *3. Jett changed various other details of the shooting from his trial testimony. *Id*. Jett also stated that he told prosecutors about an incident where York shot a man in the leg for peeing too close to his vehicle, but prosecutors dismissed the story as irrelevant. *Id*. This information was never provided to Teagle. *Id*. Jett further stated that York had threatened to kill Teagle over an unpaid debt for a package of heroin. *Id*.

This Court denied Teagle's petition as untimely as it was beyond the one-year statute of limitations, even using the most generous start date possible. *Teagle*, 2008 WL 2039438, at *5; 28 U.S.C. § 2244(d)(1)(D). This Court held that the untimely petition could not be excused by statutory or equitable tolling arguments. However, the Court did grant a certificate of appealability on the issue of whether Teagle's claim of actual innocence warranted equitable tolling. The Third Circuit affirmed the Court's denial of the petition, finding that Teagle failed to meet the standard for actual innocence and that statutory tolling was not applicable. *Teagle v. DiGuglielmo*, 336 F. App'x 209, 212 n.3, 213 (3d Cir. 2009).

In 2014, Teagle filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) for relief from judgment. Teagle asserted that his prior petition for habeas relief should be reopened according to *McQuiggin v. Perkins*, 569 U.S. 383 (2013), which recognized an actual-innocence exception to the one-year statute of limitations for filing federal habeas petitions by state prisoners. ECF No. 28 at 17–22. This Court denied the motion as, *inter alia*, the Third Circuit had previously determined Teagle's actual innocence arguments failed to meet the necessary standard. ECF No. 33 at 6.

In December 2021, Teagle filed a second motion for relief from judgment under Rule 60(b)(6), which is now before the Court. ECF No. 36. Teagle supplemented his motion with additional documentation and arguments. ECF No. 40. In this motion, Teagle asserts that the *Brady* claim in his habeas petition is altered by the Third Circuit's recent decision in *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274 (3d Cir. 2021) and his petition for relief from judgment should be reopened. ECF No. 36 at 3, ECF No. 40 at 5-7.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 60(b) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for numerous reasons. *Fuentes v. Dist. Att'y for Nothumberland Cnty.*, 2022 WL 3329285, at *1 (M.D. Pa. Aug. 11, 2022). Rule 60(b)(6) has been described as the "catch-all provision" of Rule 60(b) that permits a court to relieve a party from final judgment for "any other reason that justifies relief." *Id*.

The Third Circuit has consistently held that "the Rule 60(b)(6) ground for relief from judgment provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002) (quoting *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 194 (3d Cir. 1988)). Relief under Rule 60(b)(6) should be granted only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Cox v. Horn*, 757 F.3d 113, 115 (3d Cir. 2014) (quoting *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)); *see also Michael v. Wetzel*, 570 F. App'x 176, 180 (3d Cir. 2014) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) ("The standard for granting a Rule 60(b)(6) motion is a high one. The movant must show 'extraordinary circumstances' to justify reopening a final judgment.").

"In addressing claims invoking Rule 60(b)(6), the Third Circuit employs a flexible case-by-case analysis that 'takes into account all the particulars of a movant's case' before determining whether Rule 60(b)(6) relief should be granted." *Fuentes*, 2022 WL 3329285, at *2 (quoting *Cox*, 757 F.3d at 122). "The movant bears the burden of establishing entitlement to this extraordinary relief." *Id.* The Supreme Court has instructed that the "extraordinary circumstances" requirement in Rule 60(b)(6) "will rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

### III.  DISCUSSION

The question at issue is whether the decision in *Bracey* requires the Court to re-evaluate its decision in *Teagle* in 2008, which was subsequently affirmed by the Third Circuit. The Court finds that the circumstances in *Bracey* are not applicable to the decision in *Teagle* and, therefore Teagle is not entitled to relief from judgment pursuant to Rule 60(b).

In *Bracey*, the Third Circuit evaluated an appeal based on the statutory limitation which requires a defendant attacking his state conviction to petition federal court within one year of the date on which the "factual predicate of the claim" could have been "discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 278 (3d Cir. 2021). The opinion focuses squarely on what due diligence a defendant must be required to undertake in regard to the discovery of evidence for a *Brady* violation.

Bracey's initial federal habeas petition asserting *Brady* claims based on allegedly withheld material exculpatory evidence was dismissed as untimely under 28 U.S.C. § 2244(d)(1)(D). *See Bracey*, 986 F.3d at 280. The district court found that the allegedly exculpatory evidence was a matter of public record that petitioner could have discovered through

5

the exercise of due diligence and more than one year had passed since the factual predicate for the *Brady* claim could have been discovered. *Id*. However, in 2016, the Third Circuit ruled that a defendant does not have a duty to search public records for undisclosed *Brady* material because *Brady* is an affirmative duty for the prosecution to disclose information and allows defendants to presume the government will fulfill that obligation. *See Dennis v. Sec'y*, 834 F.3d 263 (3d Cir. 2016). Following that decision, Bracey moved for reconsideration under Rule 60(b), alleging that since the ruling made clear "there is no due diligence require[e]ment under *Brady* for defendants to discover impeachment material and it is stric[t]ly the duty of the prosecutor to provide this information, § 2244(d)(1)(D) likewise does not require petitioners in his position to undertake efforts to find exculpatory material." *Bracey*, 986 F.3d 280–81. The court reasoned that the due diligence requirement is a highly context-specific analysis that involves an assessment of what the petitioner reasonably would have expected from investigative efforts. *Id*. at 288–89. The court then found that its decision in *Dennis* constituted a material change in the decisional law with respect to the reasonable expectations of a petitioner in Bracey's position and thus shifted the ground on which Bracey's habeas petition was dismissed. *Id*. at 291. The Third Circuit ultimately concluded that "[a] petitioner's failure to search for *Brady* material of which he is unaware and which he is entitled to presume is non-existent does not fall short of the diligence required by § 2244(d)(1)(D)[]" and that its decision in *Dennis* "changed the relevant decisional law on which the dismissal of Bracey's underlying habeas petition rested." *Id*. at 291, 294. Thus the district court decision was vacated and remanded for consideration of Bracey's Rule 60(b) motion. *Id*. at 297.

  The court was clear that the scope of its holding is narrow. First, "[t]he baseline expectations that *Dennis* established for *Brady* claimants in the context of AEDPA's due

diligence requirements hold true only where the petitioner has no reasonable basis in fact to be aware of the potential *Brady* material." *Id*. at 294 (internal citation and quotation marks omitted). Second, "[a]nd as far as *Brady* claims go, due diligence requirements remain substantial: If there is a reasonable basis for a petitioner to believe additional investigation will yield undisclosed *Brady* material, that petitioner must investigate or else risk the statutory consequences." *Id.* at 294.

Teagle's claim does not fall within the scope of *Bracey*. Teagle's habeas petition claims that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) were violated when the prosecution withheld exculpatory evidence and that his trial counsel violated his constitutional rights by allowing the prosecution to withhold such evidence. ECF No. 36 at 3. Teagle contends that the three affidavits he presents constitute newly discovered evidence of actual innocence warranting equitable tolling of the one-year statute of limitations period for habeas corpus petition.

The Government contends that Teagle's habeas petition was not dismissed as untimely for a failure to exercise due diligence, "meaning the change in decisional law has no effect on the district court's prior ruling." ECF No. 46 at 6. The Court previously "gave Teagle the benefit of the doubt and assumed that he could not have discovered the information contained in the three statements earlier but held that, even using the last acquired statement as establishing the start date for [Anti-Terorism and Effective Death Penalty Act]'s statute of limitations, his petition was still over two years later." ECF No. 46 at 6-7 (citing *Teagle*, 2008 WL 2039438, at *5).

Here, Teagle discovered that Jett's testimony was potentially recanted on or around March 23, 2004, when Jett approached Teagle's sister. The state court determined that date began the clock on the statute of limitations and, furthermore, determined that the affidavits offered did not constitute newly-discovered evidence under Pennsylvania law. *Teagle*, 2008 WL

2039438, at *5 (citing state court record). Thus, the state court found Teagle's petition filed in 2007 was untimely. This Court concluded that "[w]e cannot and will not disturb such determinations as they are based exclusively on interpretations of state law." *Id*. Even assuming the date where Teagle obtained the third and final affidavit of allegedly new evidence – June 21, 2004 – the Court still found the habeas petition was filed beyond the one-year deadline. *Id*.

The Court now finds that Teagle's habeas petition was not dismissed for lack of due diligence but because he did not qualify for statutory or equitable tolling. "[A]ny state post-conviction petition that is rejected by a state court as untimely is not properly filed within the meaning of the section, and accordingly does not toll the one-year statute of limitations." *Teagle*, 2008 WL 2039438 at *5 (internal citation and quotation marks omitted). The Court gives deference to the state court's decision regarding timeliness of a petition to avoid undue interference. *Id*. Teagle did not fail to make a timely petition for lack of due diligence, as the cases in *Bracey* and *Dennis* contemplate. Generously giving Teagle as much time as possible, he had knowledge of all three affidavits of purportedly new evidence by June 2004 and yet waited years to file his habeas petition. Accordingly, the Court will not provide relief from judgment as no applicable intervening decisions necessitate reopening this case.

## IV. CONCLUSION

Nothing in Petitioner's request for relief warrants reopening this matter under Rule 60(b)(6). Therefore, the Court will deny this motion. An Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**